ams

# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| **PAYLESS SHOESOURCE , INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 07-4075-JAR |
| | ) |
| **THE TRAVELERS COMPANIES, INC.** | ) |
| **f/n/a THE ST. PAUL TRAVELERS** | ) |
| **COMPANIES, INC.,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM AND ORDER

Now before the Court are the parties' cross-motions for summary judgment: plaintiff Payless Shoesource, Inc's Motion for Partial Summary Judgment (Doc. 11) and defendant The Travelers Companies, Inc.'s Motion for Summary Judgment (Doc. 16).  The motions are fully briefed and the Court is prepared to rule.  As explained more fully below, the Court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.

**I.      Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]  A fact is only material under this standard if a dispute over it would affect the outcome

---

[1] Fed. R. Civ. P. 56(c).

of the suit.[2]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[3]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[4]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[5]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[7]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[8]  "Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[9]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to

---

[2]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3]*Id.*

[4]*Id.* at 251–52.

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[7]*Id.*

[8]*Id.*

[9]*James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citing *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 691–92 (10th Cir.1981)), *cert. denied*, 523 U.S. 1048 (1998).

the nonmoving party and that it may not make credibility determinations or weigh the evidence.[10]

## II.     Uncontroverted Facts

The following facts are either uncontroverted or stipulated to.[11]  In consideration of premiums paid by Payless Shoesource, Inc. ("Payless"), The Travelers Companies, Inc. ("Travelers") issued to Payless as the named insured a St. Paul Mercury Insurance Company Employment Practices Liability Insurance Policy bearing Policy Number 503CMO452 for the period of April 1, 2003 to April 1, 2004 (the "Policy").  The Policy has a liability limit of $10,000,000 for each policy period for all Loss combined (including Defense Costs) and a retention amount of $500,000 for each claim.

Subject to its terms, conditions, limitations and exclusions, the Policy provides the following coverage:

> The Insurer shall pay on behalf of the Insureds Loss for which the Insureds become legally obligated to pay on account of any Claim first made against them, individually or otherwise, during the Policy Period or, if exercised, the Discovery Period, for a Wrongful Employment Practice taking place before or during the Policy Period.

"Loss" is defined under the Policy as follows:

> **Loss** means the amount which the Insureds become legally obligated to pay on account of each Claim and for all Claims first made against them in the Policy Period and the Discovery Period, if exercised, for Wrongful Employment Practices for which coverage applies, including, but not limited to, damages (including compensatory damages and front and back pay damages), judgments, settlements and Defense Costs. Loss does not include (1) any amount for which the Insured is absolved from payment (2)

---

[10]*See Scott v. Harris*, –U.S.–, 127 S. Ct. 1769, 1774–75 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[11]*See* Pretrial Order (Doc. 14 at 2–4.)

>taxes, fines or penalties, (3) disability, social security, workers' compensation, medical, insurance, pension or retirement benefits, or the equivalent value thereof, (4) the multiple portion of any multiplied damage award or punitive or exemplary damages, or (5) matters uninsurable under the law pursuant to which this Policy is construed; provided this definition does not exclude punitive or exemplary damages incurred by the Insureds if coverage for such is granted pursuant to Item 2 of the Declarations and such damages are insurable under applicable law.

"Wrongful Employment Practice" is defined under the policy as

>any actual or alleged:
>1. violation of any federal state or local law or state or any common law prohibiting any kind of employment-related discrimination;
>2. employment-related harassment, including any type of sexual harassment as well as religious, racial, sexual orientation, pregnancy, disability, age or national origin based harassment and including workplace harassment by non-employees;
>3. abusive or hostile work environment, whether based on gender, religion, age, disability, race, national origin, pregnancy, marital status or sexual orientation;
>4. wrongful discharge or termination of employment, whether actual or constructive;
>5. breach of actual or implied employment contract;
>6. failure or refusal to hire;
>7. employment-related misrepresentation;
>8. failure or refusal to provide equal treatment or opportunities;
>9. employment-related defamation, libel, slander, disparagement or invasion of privacy;
>10. failure or refusal to promote, including wrongful failure to train, advance or grant bonuses or perquisites;
>11. wrongful demotion;
>12. negligent hiring or negligent supervision of others;
>13. failure or refusal to adopt or enforce adequate workplace or employment practices, policies or procedures;
>14. wrongful, excessive or unfair discipline of employees;
>15. employment-related wrongful infliction of emotional distress; or
>16. retaliation against employees, including retaliation for exercising protected rights, supporting in any way another's exercise of protected rights, participating in strikes or lockouts, threatening or actually reporting wrongful activity of an

> Insured, including violation of any federal, state or local "whistle blower" law, committed or attempted by any of the Insureds in their capacity as such.

The Policy also contains a number of exclusions. Exclusion No. 3 states:

> A. The Insurer shall not be liable for Loss on account of any Claim made against any Insured:
>
> . . . .
>
> 3. for an actual or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, the Employee Retirement Income Security Act of 1974, any workers' compensation, unemployment insurance, social security, or disability benefits law, other similar provisions of any federal, state, or local statutory or common law or any amendments, rules or regulations promulgated under any of the foregoing; provided, however, this exclusion shall not apply to any Claim for any actual or alleged retaliatory treatment on account of the exercise of rights pursuant to any such law, rule or regulation;

On November 24, 2003, plaintiffs Lorena Delgado and Raquel Guillen filed a class action suit against Payless in the Superior Court of the State of California, County of Orange ("Underlying Litigation").[12] On March 5, 2004, plaintiffs in the Underlying Litigation filed an amended complaint adding Paul Jafarina as a plaintiff. The Amended Complaint alleges that the classes of plaintiffs, comprised of over 300 individuals, are current and former employees of Payless who were "improperly required and/or allowed to work off the clock, without compensation." The first cause of action in the Underlying Litigation is for recovery of unpaid wages and penalties based on a violation of the California Labor Code.[13] The second cause of

---

[12]Lorena Delgado, et al. v. Payless ShoeSource, Inc., Case No. 03CC-00550.

[13]Cal. Labor Code § 1197 (West 2003).

action is for unfair business practices, and the third cause of action is for violation of a provision of the California Labor Code governing when an employer is required to pay an employee after the employee's separation from employment.[14]

By letter dated December 22, 2003, Travelers notified Payless that it was denying coverage for the claim and would not indemnify Payless for any loss, including defense costs, incurred regarding the Underlying Litigation. In the letter, Travelers stated that the claims asserted in the Underlying Litigation did not constitute wrongful employment practices under the Policy and that, alternatively, the claims in the Underlying Litigation were excluded from coverage. Payless disagreed with Travelers' analysis of coverage under the policy for the Underlying Litigation and the parties exchanged further correspondence regarding coverage; Travelers adhered to its refusal to provide defense and indemnification.

On January 5, 2007, the parties in the Underlying Litigation filed a Joint Stipulation of Settlement and Release ("the Settlement"), subject to approval of the court. By letter dated January 22, 2007, Payless furnished Travelers a copy of the Joint Stipulation of Settlement and Release in the Underlying Litigation, informed Travelers that it was subject to court approval, and requested that Travelers advise Payless immediately if Travelers had any objection thereto. By letter dated March 16, 2007, Payless informed Travelers that Payless anticipated the court would approve the settlement and attorney fee application at a hearing on March 29, 2007. By letter to Payless dated March 19, 2007, Travelers stated that it did not object to the Settlement, but that it "does not believe that its Policy provides any coverage for this matter" and declined to pay the settlement on behalf of Payless.

---

[14]*Id.* §§ 200–243.

On March 29, 2007, the court in the Underlying Litigation filed an Order of Final Approval of Settlement. On March 29, 2007, the court in the Underlying Litigation filed an Order Approving Attorneys Fees and Costs and awarded class counsel attorneys' fees in the amount of $875,000.00 and litigation expenses in an aggregate amount of $23,771.47.

## III.   Discussion

The parties have filed cross-motions for summary judgment, each arguing that under the terms of the Policy, judgment should be awarded in its favor. Plaintiff moves only for summary judgment on its breach of contract claim and urges that the claims in the Underlying Litigation are covered by the Policy and do not fall within any exclusions. Alternatively, plaintiff argues that the Policy is ambiguous in various respects and should, thus, be construed against defendant as the Insurer. Defendant argues that the policy is not ambiguous and does not apply to the claims settled in the Underlying Litigation. Defendant further moves for summary judgment on plaintiff's claim for bad faith.

### A.   *Choice of Law*

In making a choice of law determination, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting.[15] This principle applies even when choice of law determinations involve interpretation of contract provisions.[16] Therefore, the Court applies Kansas law to determine the choice of law. Under Kansas law, "allegations of bad faith or negligence in handling insurance claims arises under contract law."[17]

---

[15] *E.g.*, *Shearson Lehman Bros., Inc. v. M&L Invs.*, 10 F.3d 1510, 1514 (10th Cir. 1993) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941); *Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 217 (10th Cir. 1992)).

[16] *Id.*

[17] *Mirville v. Allstate Indem. Co.*, 71 F. Supp. 2d 1103, 1107 (D. Kan. 1999).

And Kansas courts apply the rule of *lex loci contractus* to contract claims, finding that the law where the contract was made controls the action.[18] The parties appear to agree that the contract was made in Kansas; therefore, Kansas law controls.

### B.    *Interpretation of the Policy*

The material facts in this matter are not disputed, instead the Court's decision rests on an interpretation of a written insurance contract; a question of law.[19] Under Kansas law, "if the language of the insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the senses and meaning of the terms used."[20] A policy is ambiguous "when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language."[21] But a term is not ambiguous merely because the parties disagree about the interpretation of the language.[22] "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the fact of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning."[23] Whether a contract is ambiguous is a question of law and the proper test is "not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean."[24] This does not mean that the insurance contract is construed

---

[18]*Id.* (citing *Safeco Ins. Co. of Am. v. Allen*, 941 P.2d 1365, 1372 (Kan. 1997)).

[19]*See, e.g.*, *Crist v. Hunan Palace, Inc.*, 89 P.3d 573, 576 (Kan. 2004).

[20]*Kemper Ins. Cos. v. Weber*, 168 P.3d 607, 610 (Kan. Ct. App. 2007).

[21]*Id.*

[22]*Id.*

[23]*Am. Family Mut. Ins. Co. v. Wilkins*, 179 P.3d 1104, 1109–10 (Kan. 2008) (quoting *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789 (Kan. 2002)).

[24]*Id.* at 1110 (quotation omitted).

"according to the insured's uninformed expectations of the policy's coverage."[25]

The Court is to consider the terms of an insurance policy as a whole, taking care not to fragment the various provisions and endorsements.[26] An insurer has a "duty to define limitations to an insured's coverage in clear and explicit terms. To restrict or limit coverage, an insurer must use clear and unambiguous language. Otherwise, the insurance policy will be construed in favor of the insured."[27] When an insurance contract is not ambiguous, the Court enforces the contract as it is written, so long as it does not conflict with any applicable statute or violate public policy.[28] And if a contract is clear and unambiguous, "there is no room for rules of construction."[29]

The Court assumes for purposes of its analysis that plaintiff's claim was covered by the Policy. The Court instead considers defendant's argument that it rightfully denied coverage based on Exclusion No. 3 because the claims in the Underlying Litigation are based on certain provisions of the California Labor Code, which are "similar" to the Fair Labor Standards Act ("FLSA"). Plaintiff argues that the exclusion does not apply because (1) the language is ambiguous, (2) under the "last antecedent rule," the phrase "other similar provisions of any federal, state, or local statutory or common law or any amendments, rules or regulations promulgated under any of the foregoing" only applies to the last item in the sequence listed

---

[25]*Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003).

[26]*Iron Horse Auto, Inc. v. Lititz Mut. Ins. Co.*, 156 P.3d 1221, 1226–26 (Kan. 2007); *Marshall*, 73 P.3d at 130.

[27]*Weber*, 168 P.3d at 611 (citations omitted); *see also Crist v. Hunan Palace, Inc.*, 89 P.3d 573, 577 (Kan. 2004).

[28]*Marshall*, 73 P.3d at 132; *Levier v. Koppenheffer*, 879 P.2d 40, 45 (Kan. Ct. App. 1994).

[29]*See, e.g.*, *Decatur County Feed Yard, Inc. v. Fahey*, 974 P.2d 569, 574 (Kan. 1999) (quotation omitted).

under the exclusion, and (3) the claims in the Underlying Litigation are not similar enough to FLSA claims to be covered by the exclusion.

In Kansas, the last antecedent rule has been employed by courts as a rule of statutory construction.[30]  When the last antecedent rule applies:

> qualifying words, phrases and clauses are ordinarily confined to the last antecedent, or to the words and phrases immediately preceding. The last antecedent, within the meaning of this rule, has been regarded as the last word which can be made an antecedent without impairing the meaning of the sentence.[31]

But the last antecedent rule is flexible and if application of the rule would "involve an absurdity, do violence to the plain intent of the language, or if the context for other reason requires a deviation from the rule, it will be necessary and proper to look for another antecedent."[32] Similarly, the United States Supreme Court has explained that the last antecedent rule only applies "ordinarily" and that "'it can assuredly be overcome by other indicia of meaning . . . .' Over the years, such indicia have counseled us against invoking the rule (often unanimously) at least as many times as we have relied on it."[33]

Exclusion No. 3 excludes from coverage actual or alleged violations of a number of specific laws.  The language of the exclusion first lists six specific federal laws and then a seventh item—a category of laws, "any workers' compensation, unemployment insurance, social

---

[30]*See Link, Inc. v. City of Hays*, 972 P.2d 753, 757–58 (Kan. 1999); *Taylor v. Perdition Minerals Grp., Ltd.*, 766 P.2d 805, 809–11 (Kan. 1988); *State v. Durham*, 172 P.3d 88, 91–92 (Kan. Ct. App. 2007); *see also United v. Bishop*, 469 F.3d 896, 903 (10th Cir. 2006).

[31]*Durham*, 172 P.3d at 91 (quoting *Barten v. Turkey Creek Watershed Joint Dist. No. 32*, 438 P.2d 732, 744–45 (Kan. 1968) (internal citation omitted)).

[32]*NEA-Goodland v. Bd. of Educ., U.S.D. No. 362, Sherman County*, 775 P.2d 675, 678 (Kan. Ct. App. 1989); *see also Durham*, 172 P.3d at 91.

[33]*Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 355–56 (2005) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)) (citations omitted).

security, or disability benefits law." Plaintiff argues that the qualifying language at the end of this series, "other similar provisions of any federal, state, or local statutory or common law or any amendments, rules or regulations promulgated under any of the foregoing," refers only to the seventh item of the series. In fact, plaintiff's position is that this qualifying language is actually two "items" in the series, the first being "other similar provisions . . . common law," and the second being "or any amendments . . . ." Defendant argues that the qualifying language should be construed as a whole and applies to all seven of the items listed in the series.

The Court only applies rules of construction if the contract is ambiguous; therefore, the last antecedent rule only applies if the Court finds the exclusion to be ambiguous. Furthermore, the last antecedent rule should not be employed "when evident sense and meaning require a different construction."[34] Here, the Court finds that the language of Exclusion No. 3 is clear and unambiguous that the state law modifier applies to all seven items in the series that precedes it. The modifier follows the list of items in the series, which strongly suggests that it applies to all items and not just the immediately preceding item. Furthermore, and most importantly, the modifier contains the language, "any of the foregoing." The plain meaning of this language, which would be apparent to any reasonably prudent insured, is that the modifier applies to each item in the preceding series listed in Exclusion No. 3. These strong indicia of meaning overcome the need to utilize the last antecedent rule.

Plaintiff strongly urges that the "similar laws" and "any amendments" portions of the qualifier are separate and that defendant "denigrate[s] the correct usage of the English language" in advocating its interpretation of the language. The Court disagrees. Plaintiff's argument

---

[34]*Link, Inc.*, 972 P.2d at 758 (quoting KARL N. LLEWELLYN, THE COMMON LAW TRADITION: DECIDING APPEALS 521 (1960)).

hinges on the use of the connector "or" between the two portions of the qualifier. But the Court finds that a plain reading of this phrase indicates that both portions of the qualifier should be read as one "item." First, the word "or" appears multiple times in this item, sometimes setoff by a comma and sometimes not.[35] The word "or" is utilized similarly in the preceding seventh item, which plaintiff's concede should be considered as one. Also, when read in conjunction with Exclusion No. 3 as a whole, the language makes sense as the last item in a series of specific laws or categories of laws.

Plaintiff heavily relies on an unpublished decision by the California Court of Appeal, *SWH Corp. v. Select Insurance Co.*[36] There, the Court interpreted a similar policy exclusion in an employment liability insurance contract; however, the exclusion language was not identical to the language at issue here. The language in that policy stated it excluded coverage for claims involving:

> (1) any law governing workers' compensation, unemployment insurance, social security, disability benefits or similar law, (2) the Fair Labor Standards Act (except the Equal Pay Act), (3) the National Labor Relations Act, (4) the Worker Adjustment and Retraining Notification Act, (5) the Consolidated Omnibus Budget Reconciliation Act of 1985, (6) the Occupational Safety and Health Act, (7) rules or regulations promulgated thereunder, amendments thereto or similar provisions of any federal, state or local statutory law or common law, (8) the Employee Retirement Income Security Act of 1974 or (9) any common law applicable to fiduciaries of any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing Benefits to employees of the Insured Company; however, this exclusion shall not apply to any Employment Claim for any actual or alleged Retaliatory

---

[35]"other similar provisions of any federal, state, **or** local statutory **or** common law **or** any amendments, rules **or** regulations promulgated under any of the foregoing,"

[36]Nos. G036145, G036627, 2006 WL 2786930 (Cal. Ct. App. Sept. 28, 2006).

Treatment.[37]

The court found that the exclusion did not apply to claims under the California wage and hour laws.[38] First, the court stated that the paragraph is ambiguous and explained that if the parties had intended the state law modifier to modify all of the previous categories of laws, then they would have either placed the modifier at the end of the list, or they would have explicitly identified the categories that were subject to the state law modification.[39] Because the court found the exclusion to be ambiguous, it construed it against the insurer.[40]

This Court finds important distinctions between the language of the exclusion in *SWH Corp.* and the exclusion language in this case. First, unlike in the *SWH Corp.* exclusion, the state modifier here comes at the end of the sequence of laws listed as excluded. In *SWH Corp.*, one of the reasons the court found the language ambiguous and therefore essentially applied the last antecedent rule, is because the modifier came both before and after a series of specific laws or categories of laws.[41] Second, important language is added to the end of the state law modifier in this case that was not present in the *SWH Corp.* language: "under *any of the foregoing*." Therefore, the Court concludes that *SWH Corp.* does not dictate that the policy language at issue here is ambiguous, or that the last antecedent rule should apply.

Plaintiff argues that the allegations in the Underlying Litigation are not all covered by Exclusion No. 3, even if it applies to California wage and hour laws. Plaintiff urges that the state

---

[37]*Id.* at *2.

[38]*Id.* at *13.

[39]*Id.*

[40]*Id.*

[41]*Id.*

13

law modifier applies to "similar *provisions*" of the laws referenced in the exclusion, not to "similar *laws*." Specifically, plaintiff argues that its allegations with regard to rest and meal breaks and overtime pay by day, rather than week, are not provided for under the FLSA but only under the California Labor Code.

Defendant responds that the California wage and hour provisions are "similar" to the FLSA and that they need not be identical to the FLSA in order to be covered by the exclusion. The Court agrees. The FLSA requires employers to pay their employees who are engaged in interstate commerce at least time and a half for any hours worked in excess of forty hours in any workweek.[42] Rest periods of a short duration are counted as hours worked under the FLSA,[43] but "bona fide meal periods" are not considered worktime.[44] Plaintiff argues that the FLSA, unlike California law, does not require rest periods, meal periods, or compensation for either. Plaintiff also focuses on the California requirement that overtime be paid for hours worked in excess of eight hours per day, rather than the forty hour work-week as required by the FLSA. But the provisions of the state law, under the plain language of the exclusion, only need be similar and not identical to provisions of the FLSA. Here, while the FLSA may not mandate certain rest and meal periods, it does provide for when those periods must be compensated for. Moreover, the overtime provisions are undisputedly "similar." Plaintiff admits that the only difference is whether overtime is calculated daily or weekly. Because the exclusion language is not ambiguous or unclear, there is no need to construe the language against defendant, the insurer.

Finally, the Court finds the Seventh Circuit's decision in *Farmers Automobile Insurance*

---

[42] 29 U.S.C. § 207.

[43] 29 C.F.R. § 785.18.

[44] 29 C.F.R. § 785.19.

*Association v. St. Paul Mercury Insurance Co.*[45] to be instructive.  There, the court considered a policy exclusion with identical language to Exclusion No. 3 here.  The only question before the court was whether Illinois' statutory overtime pay provision is "similar" to the FLSA.[46]  In rejecting the argument that the exclusion was vague and could, therefore, not be given effect, the court explained that the scope of the two laws did not bear on the question of similarity; rather, the purpose of the exclusion was equally applicable to both statutes.[47]  According to the court, the purpose of the exclusion is to avoid "moral hazard,"

> which, in its most extreme form, is the temptation of an insured to precipitate the event insured against if the insurance goes beyond merely replacing a loss. "It's why an insurer will not insure your house against fire for more than it's worth," and why liability-insurance policies are presumed not to insure against breaches of contract.  Insurance against a violation of an overtime law, whether federal or state, would enable the employer to refuse to pay overtime and then invoke coverage so that the cost of the overtime would come to rest on to the insurance company.  The employer would have violated the overtime law with impunity, unjustly enriching itself by the difference between the overtime wage for the hours in question and the straight wage.  No insurance company would knowingly write a policy that would enable the insured to trigger coverage any time it wanted a windfall.[48]

Plaintiff strongly urges the Court to dismiss this authority because coverage for discrimination claims, or the other claims covered by the Policy create arguably the same moral hazard that coverage for violations of overtime law: they would encourage an insured to violate certain laws, knowing that the insurance company would pay for any liability incurred.  But the

---

[45] 482 F.3d 976 (7th Cir. 2007).

[46] *Id.* at 977.

[47] *Id.* at 978.

[48] *Id.* at 978–79 (quoting *Moran Foods, Inc. v. Mid-Atlantic Market Dev. Co.*, 476 F.3d 436, 439 (7th Cir. 2007)) (citations omitted).

Court was speaking specifically to coverage for liability that creates a financial windfall. Plaintiff fails to explain how a company would profit from sexually discriminating against its employees, or by making misrepresentations. While these acts would certainly be unlawful, and perhaps "immoral," they would not create the financial windfall for an insured in the way that coverage for overtime violations would. While the Court does not hinge its ruling on this rationale, the Court is persuaded that this is the purpose behind Exclusion No. 3 and that it applies with equal force to both the FLSA and the California wage and hour provisions, which form the basis for all of the claims in the Underlying Litigation.[49]

For all of the reasons explained, the Court concludes as a matter of law that the claims asserted in the Underlying Litigation are excluded by the Policy under Exclusion No. 3. Therefore, summary judgment is appropriate on plaintiff's breach of contract claim.

Plaintiff also brings a claim for "bad faith," arguing that defendant "fraudulently, oppressively, maliciously, outrageously, and in bad faith towards Payless . . . failed to honor [its] duties and pay its obligations under the Policy." Defendant moves for summary judgment on this claim, arguing that such a claim is not recognized under Kansas law, except to the extent a statutory claim for attorney's fees exists pursuant to K.S.A. § 40-256. The Court agrees. In *Osgood v. State Farm Mutual Automobile Insurance Co.*,[50] the Tenth Circuit explained that Kansas law does not recognize the tort of "bad faith in the context of 'first party' litigation

---

[49]The Court is aware that plaintiff's position is that the Underlying Litigation should be construed in terms of the "allegations" made therein, rather than simply the "claims." But plaintiff cannot deny that liability in the Underlying Litigation was solely premised on violations of the California Labor Code, not for some common law claims based on breach of implied contract or misrepresentation, which they could have alleged as separate causes of action.

[50]848 F.2d 141 (10th Cir. 1988).

16

against insurance companies."[51] The court explained that a party may still assert other types of tort actions against his or her insurer, such as fraud or misrepresentation.[52] But unlike the plaintiff in *Osgood*, the allegations in the Petition here do not parallel the elements of either tort claim. And plaintiff offers no alternative legal theory under which its claim should be construed.[53] Given that the legal basis for plaintiff's claim is not recognized by Kansas law, the Court finds summary judgment is appropriate as a matter of law on this claim as well.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff Payless Shoesource, Inc's Motion for Partial Summary Judgment (Doc. 11) is denied and defendant The Travelers Companies, Inc.'s Motion for Summary Judgment (Doc. 16) is granted.

**IT IS SO ORDERED**.

Dated this 4th day of August 2008.

            S/ Julie A. Robinson
            Julie A. Robinson
            United States District Judge

---

[51] *Id.* at 144 (citing *Spencer v. Aetna Life & Cas. Ins. Co.*, 611, P.2d 149 (Kan. 1980)).

[52] *Id.*

[53] Plaintiff simply argues that factual disputes remain. But defendant must only point to the absence of a genuine issue of material fact before the burden shifts to plaintiff to come forward with evidence of a material factual dispute. Even if plaintiff had articulated a recognized legal claim in Count II, it fails to point the Court to facts that would establish such a dispute, given the Court's earlier ruling that defendant properly found the claims asserted in the Underlying Litigation were excluded from coverage.